Lisa SMITH, Appellant,

v.

SHAGNASTY'S INC. d/b/a Shagnasty's, Appellee.

No. 03–1010.

Supreme Court of Iowa.

Oct. 6, 2004.

Hugh G. Albrecht of the Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Jennifer E. Rinden of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

STREIT, Justice.

An unidentified drunk woman in a bar whacked another patron about the face with a beer bottle. The injured patron sued the bar under Iowa's dramshop statute. The district court threw out her lawsuit because on the facts presented a jury could not reasonably conclude the bar sold and served the assailant alcohol and did so when it knew or should have known she was or would become intoxicated. The court of appeals found sufficient evidence of a sale and service, but held the evidence of the bar's knowledge insufficient and affirmed. Because we think the plaintiff has generated a genuine issue of material fact on both issues, we reverse and remand for further proceedings.

## I. Facts and Prior Proceedings

Viewed in a light most favorable to the plaintiff, Lisa Smith, the facts are as follows:

In the early morning hours of August 18, 2001, Lisa Smith and her friend, Susan Isaac, ventured out to Shagnasty's (a/k/a "Shag's"), a bar in Cedar Rapids, to celebrate their upcoming birthdays. Upon arrival, they found Shagnasty's swarming with humanity. Smith and Isaac walked around the bar, surveying the terrain, and promptly headed for the restroom.

Somewhere in the vicinity of the toilets, Smith encountered an unidentified female ("Jane Doe"). Smith later recalled what transpired:

> I was standing there and [Jane Doe] ... pushed me. She was going to look in the mirror ... and I was in the way. And I didn't say anything to her.... She pushed me again and I said, "Excuse you," and she walked out saying, "I don't have to say excuse you, bitch"....

According to Isaac, Smith was not the only person Doe ran into that night. Doe "was bumping into everybody" as she left the restroom.

After a brief interlude, Smith and Isaac walked out of the restroom together. They found Doe waiting. Doe was muttering something unintelligible under her breath and holding a beer bottle in her hand. It seems she had acquired the beer after leaving the restroom. Smith and Isaac concluded Doe was intoxicated.

Smith asked Doe why she had spoken to her so rudely in the restroom. Doe, whom Smith later characterized as a "loudmouth," "got smart" with Smith and retorted "F* * * you, bitch, I don't have to say excuse me." In light of Doe's intoxication, Smith did not want to "get smart back." In reply, Smith simply lobbed the pervasive retort of our times, "whatEVER," and walked away.

Without warning, Doe hit Smith upside the face with her beer bottle, slicing up Smith's face. Recoiling from the blow, Smith started to fall. On her way down Smith managed to grab Doe's hair. A fight ensued.

Five Shagnasty's bouncers sprang into action. They tried to separate the two, but Smith refused to let go of Doe's hair unless the bouncers promised to detain

Doe until police arrived. The bouncers eventually agreed, and Smith let loose her grip on Doe's locks. The bouncers pulled Smith out of a sea of hair and blood and rushed her off to a back room.

By the time the police arrived the bouncers had let Doe slip into the night. Doe was never identified. A cocktail waitress at Shagnasty's later intimated to Smith's cousin that the unidentified assailant was underage.

Smith sued Shagnasty's under Iowa's dramshop statute. *See* Iowa Code § 123.92 (2001) (providing cause of action for injuries sustained as a result of bar patron's intoxication). She sought recovery for injuries to her left eye and lip.

The district court granted Shagnasty's motion for summary judgment. Passing on the threshold question of whether Doe was intoxicated at the time of the attack, the court ruled Smith had failed to generate a genuine issue of fact as to whether Shagnasty's (1) sold and served an intoxicating liquor to Doe or (2) knew or should have known Doe was or would become intoxicated at the time of service.

Smith appealed. The court of appeals held Smith had generated a genuine issue of fact as to whether (1) Doe was intoxicated and (2) Shagnasty's sold and served Doe alcohol. The court affirmed the district court's grant of summary judgment, however, because it concluded the record contained no "substantive evidence from which it could be shown or inferred that employees of Shagnasty's observed [Doe's behavior] or otherwise knew she was or would become intoxicated" at the time of service. *See id.* (plaintiff must show liquor licensee or permittee "sold and served any beer, wine, or intoxicating liquor to the intoxicated person when [it] *knew or should have known* the person was intoxicated, or who sold to and served the person to a point where [it] *knew or should*

*have known* the person would become intoxicated" (emphasis added)). Smith sought further review, which we granted.

## II. Standard of Review

■ Review of a grant of summary judgment is for correction of errors at law. *See Delaney v. Int'l Union UAW Local No. 94*, 675 N.W.2d 832, 834 (Iowa 2004) (citation omitted). "Summary judgment is proper only if the record made shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *accord* Iowa R. Civ. P. 1.981(3). We view the record "in the light most favorable to the resisting party, affording that party all reasonable inferences that the record will bear." *Delaney*, 675 N.W.2d at 834 (citation omitted). In sum, we "indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question." *Coralville Hotel Assocs., L.C. v. City of Coralville*, 684 N.W.2d 245, 247–48 (Iowa 2004) (quoting *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000)).

> An inference is legitimate if it is "rational, reasonable, and otherwise permissible under the governing substantive law." On the other hand, an inference is not legitimate if it is "based upon speculation or conjecture."

*McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 328 (Iowa 2002) (citations omitted).

■ The burden of showing the nonexistence of a fact question rests with the moving party. *See Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004). "If reasonable minds may differ on the resolution of an issue, a genuine issue of material fact exists." *McIlravy*, 653 N.W.2d at 328.

### III. Merits

■ Iowa's dramshop statute provides a remedy against a licensee or permittee for injuries sustained as a result of the sale and service of alcohol to an intoxicated person. *Grovijohn v. Virjon, Inc.*, 643 N.W.2d 200, 203 (Iowa 2002). The statute provides as follows:

Any person who is injured ... by an intoxicated person ... has a right of action for all damages ... against any licensee or permittee ... who sold and served any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated, or who sold to and served the person to a point where the licensee or permittee knew or should have known the person would become intoxicated.

Iowa Code § 123.92. The dramshop statute is designed to "place a hand of restraint" on those authorized to sell and serve intoxicating liquors. *Thorp v. Casey's Gen. Stores, Inc.*, 446 N.W.2d 457, 467 (Iowa 1989) (quoting *Atkins v. Baxter*, 423 N.W.2d 6, 9 (Iowa 1988)). We thus construe our dramshop statute "liberally to discourage the selling of excess liquor." *Id.*

At various stages in the litigation of this case, Shagnasty's has challenged three elements of Smith's claim. These three elements are: (1) whether Doe was intoxicated; (2) whether Shagnasty's "sold and served" Doe alcohol; and (3) whether the requisite knowledge or scienter can be attributed to Shagnasty's. We now examine each issue in turn. *See Bokhoven v. Klinker*, 474 N.W.2d 553, 557 (Iowa 1991) ("[W]e may review any or all of the issues initially raised on appeal ... whether or not they are specifically brought to our attention in the applications for further review."); *cf. State v. Doggett*, 687 N.W.2d 97, 99 (Iowa 2004) (declining to address all issues); *State v. Powell*, 684 N.W.2d 235, 237–38 (Iowa 2004) (same).

### A. Doe's Intoxication

■ As the court of appeals recognized, there is ample evidence from which a jury could conclude Doe was intoxicated at the time of her attack upon Smith. Although intoxication is a somewhat nebulous concept,

A person is .... intoxicated when one or more of the following are true:

(1) the person's reason or mental ability has been affected; (2) the person's judgment is impaired; (3) the person's emotions are visibly excited; and (4) the person has, to any extent, lost control of bodily actions or motions.

*Garcia v. Naylor Concrete Co.*, 650 N.W.2d 87, 90 (Iowa 2002) (defining intoxication for purposes of defense to workers' compensation award) (quoting *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 355 (Iowa 1995) (defining intoxication for purposes of an insurance-policy exclusion)); *accord State v. Pierce*, 65 Iowa 85, 88, 21 N.W. 195, 197 (1884) ("[A] person is drunk in legal sense when he is so far under the influence of intoxicating liquor that his passions are visibly excited or his judgment impaired by the liquor."); *State v. Huxford*, 47 Iowa 16, 18 (1877) ("When any person, from the use of intoxicating liquors, has affected his reason or his faculties, or has rendered him incoherent of speech, or has caused him to lose control in any manner, or to any extent, of the action or motions of his person or body, such person, in contemplation of law, is intoxicated.") Evidence of a person's blood-alcohol level, if available, is important evidence of intoxication. *Garcia*, 650 N.W.2d at 90; *Benavides*, 539 N.W.2d at 355.

"No particular degree of intoxication is required." *Benavides*, 539 N.W.2d at 355. "[T]here are degrees of intoxication varying all the way from slight stimulation to complete coma." *State v. Yates*, 132 Iowa 475, 478, 109 N.W. 1005, 1006 (1906).[1] Utilizing the four *Garcia/Benavides* subjects of inquiry, the question is simply whether the person is "under the influence of liquor so as not to be ... [herself], so as to be excited from it, and not to possess the clearness of intellect and that control of [herself] that [she] otherwise would have...." *Benavides*, 539 N.W.2d at 355 (quoting *State ex rel. Cosson v. Baughn*, 162 Iowa 308, 311, 143 N.W. 1100, 1101 (Iowa 1913)).

In the case at bar, there is a genuine issue of material fact as to whether Doe was intoxicated at the time of her attack upon Smith. Smith and Isaac thought Doe was intoxicated. Doe was a "loudmouth" who hurled opprobrious epithets at Smith. *Cf. Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 148 (Iowa 2002) ("increasingly loud and obnoxious" behavior evidence of intoxication for dramshop claim); *Baughn*, 162 Iowa at 312, 315, 143 N.W. at 1101, 1102 (mayor "repeatedly made use of expressions such as 'damn it,' 'God damn,' 'sons of bitches,' and the like"; sufficient evidence a mayor, in 1913, was intoxicated, thus warranting removal from office, when "he used profane language and indulged in opprobrious epithets, and talked so loudly that he could be heard far away"). Doe was also "bumping into everybody" in the restroom. *Cf. Baughn*, 162 Iowa at 313, 143 N.W. at 1102 (pointing out intoxicated man could not stand steadily). Her actions culminated in a sudden and vicious attack upon another human being. *Cf. Catania v. 124 In–To–Go, Corp.*, 287 A.D.2d 476, 731 N.Y.S.2d 207, 208 (App. Div.2001) (proof of intoxication where assailant suddenly turned around and struck plaintiff in head with brass knuckles). Importantly, Doe was holding a beer in a bar that sold alcohol. This fact tends to show that alcohol may have played a role in Doe's actions, and not some other substance. In sum, there was sufficient evidence to show Doe was intoxicated,[2] and summary judgment for want of proof on this issue is not justified.

### B. The "Sold and Served" Requirement

One can also legitimately infer Shagnasty's "sold and served" beer to Doe. Doe was holding a beer in a bar that sold beer. That Smith has not mustered any direct evidence that a particular Shagnasty's employee served Doe this beer is not fatal to her claim. A plaintiff need not produce the actual server or servers of the alcohol in order to prove a dramshop claim. *Horak*, 648 N.W.2d at 148. Circumstantial evidence is equally probative as direct evidence. Iowa R.App. P. 6.4(6)(*p*).

> A plaintiff may meet [the "sold and served" requirement with proof] that an establishment where alcohol is sold gen-

---

**1.** For example,

> A man is said to be dead drunk when he is perfectly unconscious—powerless. He is said to be stupidly drunk when a kind of a stupor comes over him. He is said to be staggering drunk when he staggers in walking. He is said to be foolishly drunk when he acts the fool. All these are cases of drunkenness—of different degrees of drunkenness.

*State ex rel. Cosson v. Baughn*, 162 Iowa 308, 311, 143 N.W. 1100, 1101 (Iowa 1913) (quoting *Elkin v. Buschner*, 16 A. 102, 104 (Pa. 1888)).

**2.** To borrow from the verbiage of *Baughn*, there is sufficient evidence to show Doe was stupidly, staggering, and foolishly drunk (but not dead drunk).

erally holds itself out as a place where persons are "served" in the ordinary sense of the word, *i.e.*, one providing premises where orders are taken, patrons are waited on, and drinks are supplied in open containers.

*Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 346 (Iowa 1991); *see also* Iowa Code § 123.110 ("It shall not be necessary in every case to prove payment in order to prove a sale within the meaning and intent of this chapter."). Shagnasty's does not dispute that it is such an establishment. For these reasons, the district court's grant of summary judgment to Shagnasty's on the "sold and served" element of Smith's dramshop claim was improper.

### C. Scienter

▆▆ The thorniest issue in this case is whether Smith can prove Shagnasty's sold and served Doe alcohol with the level of knowledge or scienter required by our dramshop statute. The court of appeals held there was no substantive evidence in the record from which a jury might reasonably infer employees of Shagnasty's knew or should have known Doe was or would become intoxicated at the time of service. The court recognized the fact Shagnasty's let Doe abscond could give rise to an unfavorable "spoliation inference," but determined this inference, standing alone, was insufficient to generate a jury question. *Cf.* 29 Am. Jur. 2d *Evidence* § 244 (1994) (spoliation inference, i.e., an inference arising from the intentional destruction of evidence within a party's control, "does not amount to substantive proof and cannot take the place of proof of a fact necessary to the other party's cause").

We conclude the facts and circumstances of this case are sufficient to generate a jury question as to whether Shagnasty's knew or should have known at the time of service that Doe was or would become intoxicated. We do not decide whether spoliation evidence standing alone is sufficient to withstand a motion for summary judgment.

▆▆ As the legislature's use of the locution "known or should have known" demonstrates, proof of scienter in a dramshop action may be shown by employing "either a subjective or an objective standard in establishing the defendant's knowledge." *Hobbiebrunken v. G & S Enters., Inc.*, 470 N.W.2d 19, 22 (Iowa 1991). For example, we have upheld a jury instruction that required the plaintiff in a dramshop action to show "the defendant must have [had] actual knowledge or that a reasonably observant person under the same or similar circumstances would have had knowledge." *Id.* Insofar as proof of a defendant's subjective intent is pursued, it must be remembered that "[d]irect proof of the intent with which an act was committed is not to be had in many cases, and, when that is true, circumstantial evidence may be sufficient." *State v. Debolt*, 104 Iowa 105, 110, 73 N.W. 499, 500 (Iowa 1897); *see Horak*, 648 N.W.2d at 148. We must also reiterate that Smith does not need to prove the actual server of the alcohol in order to prevail on her dramshop claim. *Horak*, 648 N.W.2d at 148.

Two inferences, taken together, lead us to the conclusion that there is a genuine issue of material fact on the scienter requirement of Smith's dramshop claim. The first inference arises from Doe's intoxicated condition shortly after the apparent time of service; the second redounds from the bouncers' actions that resulted in Doe's unknown identity.

### 1. Subsequent Intoxicated Condition Inference

▆▆ As indicated earlier in this opinion, at the time of the attack a jury could

reasonably find (1) Doe was intoxicated and (2) Shagnasty's sold and served her alcohol. If one also bears in mind the commonsense inference that the solitary beer in Doe's hand at the time of the attack did not solely cause her intoxication, then an inference arises that at the time of service Shagnastsy's knew or should have known Smith was or would become intoxicated. In affording Smith all legitimate inferences, we simply recognize that if (1) one beer does not a drunk make, (2) Shagnasty's sold and served Doe a beer, and (3) Doe was shortly thereafter in a visibly intoxicated condition, then it stands to reason that (4) Doe was also noticeably intoxicated at the time of service. Moreover, if a patron was likely visibly intoxicated at the time of service, a jury could find (5) the bar knew or, at the very least, should have known of her intoxication. As the Indiana Court of Appeals recently recognized,

> when viewed most favorably to the nonmoving party, the fact that [a bar] served *even one beer* to a person who shortly thereafter was in a state of serious intoxication gives rise to a question of fact whether [the intoxicated person] was visibly intoxicated at the time [of service].

*Ward v. D & A Enters. of Clark County, Inc.*, 714 N.E.2d 728, 730 (Ind.Ct.App. 1999) (emphasis added). *But see* Richard Smith, Note, *A Comparative Analysis of Dramshop Liability and a Proposal for Uniform Legislation*, 25 J. Corp. L. 553, 559 (2000) ("[T]estimony of the intoxicated person's demeanor at the time of injury is often held insufficient to establish the person's condition when the dramshop sold the alcohol."). We recognize that such a "subsequent intoxicated condition infer-

ence" might not be appropriate in every case, but in this case the inference is warranted because of the presumably short timeframe between service and the attack: for at the time of the attack, Doe was still in the bar, holding a beer, in a visibly intoxicated state. In this case, the inference tends to show that when Shagnasty's sold and served Doe the beer in question, Shagnastsy's knew or should have known she (1) was already intoxicated or (2) would become intoxicated.

## 2. An Unidentified Assailant

The conclusion that Shagnasty's sold and served Doe alcohol when it knew or should have known Smith was intoxicated or would become intoxicated is bolstered when one also considers the evidence in the record that tends to show Shagnasty's intentionally let Doe abscond after agreeing to hold her. Although the court of appeals framed this second supporting inference as a matter of "spoliation," at this stage in the proceedings we need not entangle ourselves in that thorny doctrine.[3] *See State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004) ("[T]he general principle [is] that when evidence is intentionally destroyed, 'the fact finder may draw the inference that the evidence destroyed was unfavorable to the party responsible for its spoliation.'" (Citation omitted.)); *see, e.g., The Bermuda*, 70 U.S. (3 Wall.) 514, 550, 18 L.Ed. 200, 204 (1865) (burning letters and throwing boxes overboard "warrant[ed] the most unfavorable inferences as to [ship's] ownership, employment, and destination"); *Hodge v. Wal–Mart Stores, Inc.*, 360 F.3d 446, 450–51 (4th Cir.2004) (discussing applicability of spoliation inference where employee of corporation allowed witness to leave scene of personal

---

**3.** As a consequence, nothing in this opinion should be construed as mandating a spoliation instruction or the factfinder's drawing of

a spoliation inference after such an instruction.

injury accident unidentified). Viewing the facts in a light most favorable to Smith, we simply think that one could infer that Shagnasty's sold and served Doe alcohol when it knew or should have known Doe was or would become intoxicated from the fact that Doe was allowed to leave before she was identified. Doe's condition—let alone her potential testimony—would clearly have been admissible evidence at trial. In fact, there is evidence the bouncers intentionally let Doe abscond; Doe was permitted to leave after the bouncers assured Smith they would detain Doe until police arrived. Even if the bouncers did not have the authority to detain Doe, they could have, at the very least, obtained identifying information from Doe in lieu of the promised detention of Doe, so Smith could ascertain the identity of her assailant. In short, one could conclude Shagnasty's gave Smith the run-around. *Cf. Hartsfield,* 681 N.W.2d at 631–33 (evidence of spoliation in criminal case where jailhouse video tape destroyed). As a result, this potential evidence was lost when Doe was permitted to leave the bar before police arrived. For this reason, a jury could infer an admission by conduct of the weakness of Shagnasty's case, i.e., that Shagnasty's sold and served Doe alcohol when it knew or should have known Doe was or would become intoxicated.[4]

In sum, we hold that two inferences, taken together, lead us to the conclusion that a reasonable jury could find a genuine issue of material fact on the scienter re-

quirement of Smith's dramshop claim. The first inference arises from Doe's intoxicated condition shortly after the presumed time of service, the second from the bouncers' actions that resulted in Doe's unknown identity. Summary judgment on the issue of scienter was not proper.

## IV. Conclusion

We vacate the decision of the court of appeals and reverse the district court judgment. When viewed in a light most favorable to Smith, we think she has generated a genuine issue of material fact on three elements of her claim, i.e., whether (1) Doe was intoxicated; (2) Shagnasty's sold and served Doe alcohol; and (3) Shagnasty's did so when it knew or should have known Doe was intoxicated or would become intoxicated. Summary judgment was not proper, and the case must be remanded for further proceedings not inconsistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur except CARTER, J., who takes no part.

---

4. Indeed, there is no reason why this inference must be limited to the scienter issue. Because the inference is, in essence, an admission by conduct of the weakness of Shagnasty's case, it also bolsters Smith's claims that (1) Doe was intoxicated and (2) Shagnasty's sold and served Doe alcohol.