Michelle VANDERHOEK,
Appellant–Plaintiff,

and

The Fraternal Order of Eagles,
Appellant–Defendant,

v.

Mrs. Gertrude L. WILLY and Terre
L. Neil, Appellees–Defendants.

No. 45A03–9910–CV–382.

Court of Appeals of Indiana.

May 15, 2000.

Robert F. Parker, Beckman, Kelly & Smith, Nels A. Kompier, Funk & Foster, Hammond, Indiana, Attorneys for Appellants.

Arlington J. Foley, Merrillville, Indiana, Attorney for Appellees.

## OPINION

BAILEY, J.

### Case Summary

Appellant–Plaintiff Michelle Vanderhoek ("Vanderhoek") was injured in an automobile accident with intoxicated motorist Terry L. Neil ("Neil"). Vanderhoek brought an action against Neil, Neil's mother, Appellee–Defendant Gertrude Willy ("Willy"), and Appellant–Defendant the Fraternal Order of Eagles ("FOE") under Indiana's Dram Shop Act. Vanderhoek now appeals the trial court's order that granted Willy's Motion for Summary Judgment. The FOE appeals the trial court's order that denied its Motion for Summary Judgment.

### Issues

This interlocutory appeal presents two issues, which we restate as follows:

I.  Whether the trial court properly denied the FOE's Motion for Summary Judgment; and

II. Whether the trial court properly granted Willy's Motion for Summary Judgment.

### Facts and Procedural History

The evidence most favorable to Vanderhoek reveals that on December 24, 1992, Neil arrived at the FOE between 7:30 and 8:00 p.m. The bar was "packed" that night. Neil had consumed no alcoholic beverages prior to his arrival. While at the FOE, Neil both sat at the bar and spent some time shooting pool. While sitting at the bar, Neil was with Willy, his mother. Neil ordered one beer. Willy ordered an unspecified number of beers for her and Neil. Neil also won two drinks while playing pool. The record does not indicate who furnished these two drinks to Neil. With the exception of patrons, the view of the pool table area from the bar was unobstructed.

In support of their motions for summary judgment, the parties designated the affidavits of various patrons, including Willy, which averred that they had each observed Neil in the FOE that night; that they did not observe him purchase drinks from the bartender or acquire drinks from Willy; that his speech was not slurred; that he was not unsteady on his feet; and that in general he exhibited no obvious signs of intoxication.

The automobile accident in which Vanderhoek was injured took place at approximately 9:00 p.m. The accident occurred approximately 1½ blocks from the FOE. Neil had not driven elsewhere prior to the accident. Shortly after the accident, the Crown Point Police arrived on the scene. The Probable Cause Affidavit executed by Officer David Uran ("Officer Uran") stated that at 9:19 p.m. Neil was observed with a strong odor of intoxicants on his breath, his eyes were watery and bloodshot, his face was flushed and red, his clothing was disarrayed, his reactions were speeded up, and his finger dexterity was slow. Field sobriety tests were administered; during which Neil exhibited unsteadiness in balance; slurred, confused, mumbling and profane speech; and an attitude characterized as angry and crying. After Neil failed both the walk-and-turn and one-leg-stand balance test, he then failed the horizontal gaze nystagmus (HGN) test in both his left and right eye. The police transported Neil to the police station where he was subjected to a breath test for alcohol. The result of the test was a blood alcohol concentration of .15 %.

At the parties' summary judgment hearing the trial court made the following statement.

I am going to grant your motion, Mr. Foley, on behalf [of Willy.] I don't think there is any duty on her part or

any liability that I can see as far as she is concerned.

(Supplemental Record at 2.) The Motion for Summary Judgment filed by Willy was granted by order dated May 24, 1999. The Motion for Summary Judgment filed by the FOE was denied by order dated May 28, 1999. On September 13, 1999, the trial court overruled the Vanderhoek's Motion to Correct Errors, but certified its orders as appropriate for interlocutory appeal under Appellate Rule 4(B)(6.) Both Vanderhoek and the FOE filed petitions to accept interlocutory appeal. By Order dated October 29, 1999, this Court accepted and consolidated the interlocutory appeals.

### Discussion and Decision

#### *Standard of Review*

This case comes to us on both a grant and denial of summary judgment. Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). This court may only consider matters that were designated at the summary judgment stage of the proceedings. *Diversified Financial Systems, Inc. v. Miner*, 713 N.E.2d 293, 297 (Ind.Ct.App.1999). We give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant. *Id.* The moving party bears the burden of proving the absence of a genuine issue of material fact. *Shell Oil Company v. Lovold*, 705 N.E.2d 981, 984 (Ind.1998) *reh'g denied.* If the movant sustains this burden, the opponent must set forth specific facts showing that there is a genuine issue of material fact. T.R. 56(E); *Shell Oil Company*, 705 N.E.2d at 984. A genuine issue of material fact exists where the facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Mendenhall v. City of Indianapolis*, 717

N.E.2d 1218, 1224 (Ind.Ct.App.1999) *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

#### *The Dram Shop Act*

■ The Dram Shop Act represents a legislative judgment that providers of alcoholic beverages should be liable for the reasonably foreseeable consequences of knowingly serving alcohol to visibly intoxicated persons. *National R.R. Passenger Corp. v. Everton*, 655 N.E.2d 360, 366 (Ind. Ct.App.1995). A defendant may not be held liable under the Dram Shop Act for "furnishing" an alcoholic beverage to another person unless the defendant had actual knowledge that the person served was visibly intoxicated. *Weida v. Dowden*, 664 N.E.2d 742, 748–49 (Ind.Ct.App.1996) *trans. denied.* In order to "furnish" an alcoholic beverage, a defendant must be found to have possessed or controlled the alcoholic beverages consumed. *Estate of Cummings by Heck v. PPG Industries, Inc.*, 651 N.E.2d 305, 308 (Ind.Ct.App. 1995). When determining whether a furnisher of alcoholic beverages knew a person was intoxicated, we look to what and how much a person was known to have consumed, the person's behavior at the time, and the person's condition. *Ashlock v. Norris*, 475 N.E.2d 1167, 1170 (Ind.Ct. App.1985).

■ "Indiana's Dram Shop Act statutorily allows for civil liability in certain situations when one furnishes alcohol to another who then causes an injury due to their intoxication." *Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 974 (Ind.1999). Specifically, Indiana Code sections 7.1–5–10–15 and 7.1–5–10–15.5 provide in pertinent part the following:

Sec. 15. (a) It is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the

person knows that the other person is intoxicated.

Ind.Code § 7.1–5–10–15.

Sec. 15.5. (a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide or give away.

(b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

(1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

(c) If a person who is at least twenty-one (21) years of age suffers injury or death proximately caused by the person's involuntary intoxication, the:

(1) person;

(2) person's dependents;

(3) person's personal representative; or

(4) person's heirs;

may not assert a claim for damages for personal injury or death against a person who furnished an alcoholic beverage that contributed to the person's intoxication, unless subsection (b)(1) and (b)(2) apply.

Ind.Code § 7.1–5–10–15.5.

## I. Whether the trial court properly denied the FOE's Motion for Summary Judgment

Vanderhoek seeks to recover against both the FOE and Willy under Indiana

Code sections 7.1–5–10–15 and 7.1–5–10–15.5.[1] (Appellant–Vanderhoek's Brief at 9.)

### Argument–FOE

The FOE concedes that Neil was intoxicated when he left the FOE. However, the FOE contends that the designated materials fail to show that any FOE personnel were aware that Neil was intoxicated while in the FOE. Additionally, the FOE argues that even if this Court were to infer that FOE personnel had actual knowledge of Neil's visible intoxication, it cannot be inferred from the evidence that such knowledge existed at the time Neil was furnished the draft beer. We disagree. Specifically, the FOE argues as follows:

[T]here is neither evidence nor a reasonable inference that an FOE bartender furnished alcoholic beverages to Neil while actually aware that he was visibly intoxicated.

Moreover, FOE and Willy must be judged by the same standard. FOE is entitled to summary judgment. But if it is not, Willy's summary judgment should be reversed and the matter remanded to the trial court for continued proceedings against both FOE and Willy.

(Appellant–FOE's Brief at 17.)

In *Delta Tau Delta, Beta Alpha Chapter*, 712 N.E.2d 968, our supreme court summarized Indiana case law regarding "furnishing" and "actual knowledge" of intoxication, as those terms appear under Indiana Code section § 7.1–5–10–15.5, as follows:

The furnisher's knowledge must be judged by a subjective standard. Absent an admission that the person furnishing alcohol had actual knowledge of the other's intoxication, the trier of fact must look to reasonable inferences based upon an examination of the sur-

---

1. Vanderhoek also asserts a claim under a common law negligence theory. However, by asserting common law liability for negligence in the provision of alcoholic beverages Vanderhoek is restricted to cases involving the breach of a statutory duty. *See Weida v. Dowden*, 664 N.E.2d at 747. Here, the applicable statutes are Indiana Code sections 7.1–5–10–15 and 7.1–5–10–15.5.

rounding circumstances. Actual knowledge of intoxication can be inferred from indirect or circumstantial evidence such as what and how much the person was known to have consumed, the time involved, the person's behavior at the time, and the person's condition shortly after leaving. Where, however, there is insufficient evidence to support actual knowledge, the issue may be resolved as a matter of law.

*Id.* at 974 (internal citations and quotation omitted).

In *Ward v. D & A Enterprises of Clark County,* 714 N.E.2d 728 (Ind.Ct.App.1999), the estate of a motorist who was killed in a collision with an intoxicated motorist brought a dram shop action against the tavern that had furnished the beer to the intoxicated motorist shortly before the accident. The designated materials disclosed that the intoxicated motorist did not appear intoxicated prior to his arrival at the tavern, yet seventy-five minutes later, at the scene of the accident, he failed nine field sobriety tests and registered a .22% blood alcohol content ("BAC") on a breathalyzer. *Id.* at 730. Our court held that "the fact [that the tavern] served even one beer to a person who shortly thereafter was in a state of serious intoxication gives rise to a question of fact whether [the intoxicated motorist] was visibly intoxicated at the time [he was served]." *Id.*

### Analysis

In the instant case, Neil was served at least three beers at the FOE on the night of December 24, 1992. Neil ordered at least one of these beers from the bar area. Neil testified that prior to his arrival at the FOE he had not consumed alcoholic beverages. Neil was at the FOE for approximately an hour. The FOE concedes that Neil was intoxicated when he left the FOE. A short time after leaving the FOE, at the scene of the accident, Neil failed several field sobriety tests and registered a blood alcohol concentration of .15%. From these facts a trier of fact could reasonably infer that the FOE had actual knowledge of Neil's intoxication at the time he was served. Therefore, we hold that the trial court did not err by denying the FOE's motion for summary judgment.

### II. Whether the trial court properly granted Willy's Motion for Summary Judgment

#### Argument–Vanderhoek

Vanderhoek contends that the trial court erred when it determined that Willy did not owe a duty to Neil akin to the duty the FOE owed to Neil. Specifically, Vanderhoek's argument asserts the following:

> If Plaintiff Vanderhoek is entitled to an evidentiary inference against the [FOE] that Neil was visibly intoxicated while seated at the [FOE], then by that same inference Willy also had knowledge that Neil was visibly intoxicated when she gratuitously furnished alcoholic beverages for Neil while seated with him at the FOE.

(Appellant–Vanderhoek's Brief at 15.)

#### Argument–Willy

Willy contends that the trial court correctly granted summary judgment in her favor. Willy argues that the designated materials fail to create a genuine issue of fact as to whether she "furnished" alcoholic beverages to Neil, within the meaning contemplated by Indiana Code sections 7.1–5–10–15 and 7.1–5–10–15.5, and whether Neil was visibly intoxicated at the time Willy ordered him a beer.

In the *Estate of Cummings by Heck,* 651 N.E.2d 305, PPG employees organized a party for PPG's third-shift employees, to be held at the Hornville Tavern. PPG management and PPG employees contributed money towards the party. The Hornville Tavern was responsible for asking for identification from its customers and for dispensing alcoholic beverages. An underage PPG employee attended the party, drank alcoholic beverages, became intoxicated, and caused a fatal car accident.

Our court determined that "PPG never possessed or controlled the alcoholic beverages that [the minor] drank." *Id.* at 308. Therefore, we held that since "PPG was not the active means by and through which [the minor] obtained the alcoholic beverages" PPG could not be found to have "furnished" the alcoholic beverages to the minor "so as to invoke liability under the [Dram Shop] Act." *Id.* Accordingly, we held that the trial court's grant of summary judgment in favor of PPG was proper. *Id.* at 309.

In *Ashlock*, 475 N.E.2d 1167, the estate of a pedestrian who was struck and killed by a motorist brought a wrongful death action against the gratuitous server, who had allegedly furnished the motorist with alcoholic beverages shortly before the accident. The gratuitous server moved for summary judgment, contending that there existed no genuine issue of fact concerning his knowledge of the motorist's intoxication at the time he furnished her a drink. *Id.* at 1169. Our court considered both the underlying purposes of the Dram Shop Act and Trial Rule 56 in addressing this issue.

> [A] legitimate question may be posed as to whether the legislature intended to, and whether sound public policy supports, the extension of civil liability to family, friend or acquaintance who merely furnishes "one more drink" to an intoxicated person. Considering the carnage on our public highways involving intoxicated drivers, the answer to both questions may be "yes."
>
> . . . .
>
> If after considering the factual materials any doubt remains as to the existence of a genuine issue of material fact, summary judgment is inappropriate. Summary judgment should not be used as an abbreviated trial wherein conflicting in-

ferences are resolved and evidence is weighed.

*Id.* at 1169, 1171 (citations omitted).

We then held as follows:

> Here a doubt remains; a doubt that may be fairly resolved when the testimony of all the witnesses is heard and credibility determinations can be properly made. Therefore the summary judgment must be reversed.

*Id.* at 1171.[2]

## Conclusion

■ The evidence most favorable to Vanderhoek reveals that Willy ordered an unspecified number of beers for her and Neil. Here, a trier of fact could reasonably infer that as a gratuitous server, Willy possessed or controlled at least some of the alcoholic beverages consumed by Neil on the night of the accident. Additionally, as Willy and Neil were seated together at the bar, it may be reasonably inferred that Willy had actual knowledge of Neil's intoxication at the time she ordered him one or more beer(s). Moreover, Indiana's Dram Shop Act and relevant case law do not distinguish between the act of furnishing by a gratuitous server and by a tavern. Accordingly, when applying Indiana's Dram Shop Act and relevant case law it matters not whether *one more drink* was served by the FOE or Willy. In the context of this case the independent acts of the FOE and Willy in furnishing alcohol to Neil create genuine issues of material fact causing the trial court's grant of summary judgment in favor of Willy to be in error.

Affirmed in part, reversed in part and remanded.

BAKER, J., and NAJAM, J., concur.

---

**2.** A year subsequent to *Ashlock v. Norris*, 475 N.E.2d 1167, our legislature added section

7.1–5–10–15.5 to the Indiana Code.