# FOR PUBLICATION



FILED
Dec 04 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN F. TOWNSEND, III**
Townsend & Townsend, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT A. DURHAM**
**ABBEY E. JEZIORSKI**
State Farm Litigation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALBERT C. GENTRY, II, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1406-CT-226 |
| | ) | |
| NORA DAY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SEAN R. BLOOMQUIST, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| _____ | ) | |
| | ) | |
| NORA DAY, | ) | |
| | ) | |
| Cross-Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SEAN R. BLOOMQUIST, | ) | |
| | ) | |
| Cross-Claim Defendant. | ) | |

**December 4, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Eighteen-year-old Sean R. Bloomquist hosted a party at his father's home while his father, stepmother, and older brother were away. Bloomquist, eighteen-year-old Nathan Gentry ("Nathan"), and seventeen-year-old Andrew Gaddie gave money to nineteen-year-old Dustin Stamm to purchase alcohol. Stamm went by himself to purchase the alcohol and returned to Bloomquist's home with a case of beer, which was kept in the open trunk of Stamm's car during the party. Seventeen-year-old Christopher Hubbard arrived at the party after the beer was purchased, and Bloomquist gave him permission to have some beer. Hubbard drank beer and played "beer pong" at the party and went to bed in Bloomquist's home between midnight and 2:00 a.m. Hubbard awoke around 8:00 the next morning and left the house with Bloomquist and Nathan to drive another partygoer to softball practice. Hubbard's vehicle struck a tree, and Nathan died as a result of the collision.

Under Indiana law, a person is subject to civil liability for damages if he "furnished" alcohol to a minor with actual knowledge that the minor was visibly intoxicated when the alcohol was furnished and the intoxication was a proximate cause of the damage. Ind. Code §§ 7.1-5-7-8, 7.1-5-10-15, 7.1-5-10-15.5. Our cases have held that a person "furnishes"

2

alcohol in violation of the relevant statutes where that person is "'the active means' by and through which the [alcohol] was placed in the custody and control of the intoxicated person." *Rauck v. Hawn*, 564 N.E.2d 334, 337 (Ind. Ct. App. 1990) (quoting *Lather v. Berg*, 519 N.E.2d 755, 761 (Ind. Ct. App. 1988)).

Nathan's father, Albert C. Gentry, II ("Gentry"), filed a complaint alleging that Bloomquist was liable for Nathan's death because he furnished alcohol to Hubbard with actual knowledge that Hubbard was visibly intoxicated and the intoxication was a proximate cause of Nathan's death. Bloomquist filed a motion for summary judgment asserting that he did not furnish alcohol to Hubbard as a matter of law. The trial court granted Bloomquist's summary judgment motion.

Gentry now appeals, arguing that a genuine issue of material fact exists regarding whether Bloomquist furnished alcohol to Hubbard. We agree with Gentry and therefore reverse and remand for further proceedings.

### Facts and Procedural History[1]

The relevant facts most favorable to Gentry as the party opposing summary judgment are as follows. In May 2012, Bloomquist hosted a party at his father's home in Pittsboro. Bloomquist's father, stepmother, and twenty-two-year-old brother were not at home and were unaware of the party. Bloomquist, Nathan, and Gaddie gave money to Stamm to purchase alcohol. Stamm went by himself to purchase the alcohol and returned to Bloomquist's home

---

[1] We heard oral argument on October 29, 2014, at the University of Notre Dame Law School. We thank the faculty and staff for their hospitality, the students for a lively postargument question-and-answer session, and counsel for their participation and excellent advocacy.

with a thirty-can case of beer. According to Bloomquist, the beer was for Stamm, Hubbard, Nathan, and Gaddie, and it was kept in the open trunk of Stamm's car "for everyone to get for themselves." Appellant's App. at 39. Persons other than those who contributed to buy the beer drank some of the beer. *Id*. at 43.

According to Hubbard, the beer was already at the party when he arrived around 8:00 p.m., and Bloomquist gave him permission to have some. *See id*. at 83 ("Q[.] Well, who gave [the beer] to you then? A[.] Uh, it was in the cooler and I was just told I could have it. Q[.] Who gave you permission to have [the beer]? A[.] Uh, I believe [Bloomquist] did."). Hubbard did not know who purchased the beer and did not bring his own beer. Hubbard drank beer and played "beer pong" at the party. Bloomquist was with Hubbard all evening and could tell that Hubbard was "a little tipsy" or "buzzed" and had the "odor of alcohol … on his breath." *Id*. at 96. Hubbard went to bed in Bloomquist's home between 12:00 and 2:00 a.m. Hubbard awoke around 8:00 a.m. and left the house at 8:30 a.m. with Bloomquist and Nathan to drive another partygoer to softball practice. Hubbard lost control of his vehicle and struck a tree. Nathan died as a result of the collision.

In June 2012, Gentry filed a complaint for damages against Hubbard, Bloomquist, and Bloomquist's mother, Nora Day. Gentry alleged that Bloomquist was liable for Nathan's death because he furnished alcohol to Hubbard with actual knowledge that Hubbard was visibly intoxicated and the intoxication was a proximate cause of Nathan's death. Day filed a cross-claim against Hubbard and Bloomquist and a third-party claim against Hubbard's parents. Bloomquist filed a motion for summary judgment against Gentry and Day

4

contending that he did not furnish alcohol to Hubbard as a matter of law. Gentry filed a response asserting the existence of a genuine issue of material fact regarding whether Bloomquist furnished alcohol to Hubbard. The trial court summarily granted Bloomquist's motion.[2] Gentry now appeals.

**Discussion and Decision**

Gentry contends that the trial court erred in granting Bloomquist's summary judgment motion. Pursuant to Indiana Trial Rule 56(C), "summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law." *Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 887 (Ind. Ct. App. 2002), *trans. dismissed* (2003). When reviewing a decision to grant summary judgment, we apply the same standard as the trial court. *Id*. "We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court." *Id*. at 888 (citation omitted). A party seeking summary judgment has the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Id*. "Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may

---

[2] Bloomquist notes that "Gentry reached a settlement with Hubbard and his parents, and they were dismissed on May 1, 2014. Thus, the only parties remaining were Albert Gentry, Nora Day, and Sean Bloomquist." Appellee's Br. at 1 (citation to appendix omitted).

5

not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial." *Id.*

> We construe all facts and reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. Upon appeal, the non-moving party has the burden of proving that the grant of summary judgment was erroneous, but we review the trial court's decision carefully to ensure that the nonmovant was not improperly denied his day in court.

*Kelly v. Hamilton*, 816 N.E.2d 1188, 1191 (Ind. Ct. App. 2004) (citation omitted).

"A genuine issue of material fact exists where the facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Vanderhoek v. Willy*, 728 N.E.2d 213, 215 (Ind. Ct. App. 2000). "Where the evidence is in conflict, or undisputed facts lead to conflicting inferences, summary judgment should not be granted, even if it appears that the nonmovant will not succeed at trial." *Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind. Ct. App. 2009).

Gentry's claim against Bloomquist is based on the latter's alleged violation of several Indiana statutes. Indiana Code Section 7.1-5-7-8 makes it a class B misdemeanor for a person to "recklessly, knowingly, or intentionally sell, barter, exchange, provide, or furnish an alcoholic beverage to a minor." Indiana Code Section 7.1-5-10-15(a) makes it a class B misdemeanor for a person "to sell, barter, deliver, or give away an alcoholic beverage to

another person who is in a state of intoxication if the person knows that the other person is intoxicated."[3] And Indiana Code Section 7.1-5-10-15.5 states,

> (a) As used in this section, "furnish" includes barter, deliver, sell, exchange, provide, or give away.
>
> (b) A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:
>
>> (1) the person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and
>>
>> (2) the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.[4]

Civil liability may be imposed for injuries to third parties caused by violations of these statutes. *Estate of Cummings by Heck v. PPG Indus., Inc.*, 651 N.E.2d 305, 308 (Ind. Ct. App. 1995) (citing *Rauck*, 564 N.E.2d at 337), *trans. denied* (2006).

"In each case where it has been held that a defendant furnished alcohol to another for his or her use in violation of the statutes, the supplier was 'the active means' by and through which the [alcohol] was placed in the custody and control of the intoxicated person." *Rauck*, 564 N.E.2d at 337 (quoting *Lather*, 519 N.E.2d at 761). Gentry contends that this case is similar to *Brattain v. Herron*, 159 Ind. App. 663, 309 N.E.2d 150 (1974), *trans. dismissed*,

---

[3] Indiana Code Sections 7.1-5-7-8 and 7.1-5-10-15 were amended effective July 1, 2014. We quote the version of the statutes in effect when Bloomquist allegedly furnished alcohol to Hubbard.

[4] Proximate causation is not at issue in this appeal, nor is whether Hubbard was visibly intoxicated or whether Bloomquist had actual knowledge thereof. Gentry cited only Indiana Code Sections 7.1-5-7-8 and 7.1-5-10-15.5 in his complaint, but both parties also mention Section 7.1-5-10-15 in their appellate briefs.

which is cited in *Lather*. Brattain was the older sister of twenty-year-old Farmer, who drove

to her home with a friend.

> While Mr. Farmer and his young friend were in Mrs. Brattain's home
> they had access to the refrigerator and consumed therefrom several bottles of
> beer, together with several glasses of whiskey and coke. When they left the
> home to return to New Palestine they each took a cold beer with them in
> Farmer's automobile. All the alcoholic beverages that were consumed
> belonged to Mrs. Brattain and came from her refrigerator and with her
> knowledge that the boys were consuming the beverages, and she visited with
> them a part of the time they were there drinking. She was in and out of the
> home during the entire four hour period that the boys were drinking her liquor,
> made no objections to their drinking or to their taking the beer with them when
> they left. Donald Farmer was her brother and she knew he was under 21 years
> of age and she further knew, or by the exercise of reasonable care, should have
> known that Farmer would be driving his automobile on the highway as soon as
> he left her home.

*Id.* at 665-66, 309 N.E.2d at 152. After leaving Brattain's home, Farmer collided with a

pickup truck, which resulted in the deaths of its three occupants. The administrators of the

decedents' estates successfully sued Brattain for violating what is now Indiana Code Section

7.1-5-7-8.[5]

On appeal, Brattain asserted that the evidence established that she did not violate the

statute. The court replied,

> With this contention we cannot agree. The evidence discloses that while Mrs.
> Brattain did not serve the liquor to Mr. Farmer she was aware that Mr. Farmer
> and his friend were obtaining the beer and whiskey from her refrigerator. The
> evidence discloses that Mrs. Brattain made no objection at any time to Mr.
> Farmer's consumption of the alcoholic beverages, even though she was present
> on the premises during the entire four hour period when Farmer and his friend

---

[5] At that time, the statute read in pertinent part, "No alcoholic beverages shall be sold, bartered, exchanged, given, provided or furnished, to any person under the ages of twenty-one (21) years[.]" *Brattain*, 159 Ind. App. at 672, 309 N.E.2d at 155.

were in her residence. It is our opinion that the evidence shows conclusively that Mrs. Brattain violated the statute in question.

*Id*. at 676, 309 N.E.2d at 157-58.

Although *Brattain* is not precisely on all fours with this case, we find it instructive in considering whether Bloomquist furnished alcohol to Hubbard as contemplated by the statutes at issue.[6] We are mindful that, in drafting those statutes, the legislature clearly intended to limit minors' access to alcohol and discourage underage drinking. Bloomquist did not personally purchase the beer, but he contributed money for the beer. Like Brattain, Bloomquist allowed Hubbard, his guest, onto the premises and gave him permission to drink the beer, which was kept in a car trunk on the premises.[7] At the very least, conflicting inferences could be drawn regarding whether Bloomquist was the active means by and through which the beer was placed in Hubbard's custody and control. *Cf. Bowling v. Popp*, 536 N.E.2d 511, 514 (Ind. Ct. App. 1989) (affirming summary judgment for defendant nineteen-year-old party host and parents in lawsuit based on alleged violation of Ind. Code § 7.1-5-7-8, holding that they did not furnish alcohol to uninvited intoxicated minor who "came and helped himself to beer," which could have been brought by "[a]ny one of the 50 people"

---

[6] Bloomquist attempts to distinguish *Brattain* on the basis that the defendant in that case "knew that the person who consumed the alcohol would be driving as soon as he left her home." Appellee's Br. at 9. We fail to see how such knowledge would be relevant to whether the defendant furnished alcohol to the intoxicated person.

[7] As previously mentioned, Bloomquist stated that the beer was left in Stamm's car trunk "for everyone to get for themselves" and that persons other than those who contributed to buy the beer drank some of the beer. Appellant's App. at 39, 43. The designated evidence is silent, however, regarding whether those persons sought or obtained Bloomquist's permission to drink the beer.

at the party). As such, we conclude that the trial court erred in granting Bloomquist's summary judgment motion, and therefore we reverse and remand for further proceedings.

Reversed and remanded.

VAIDIK, C.J., and BARNES, J., concur.